**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

**FILED**
**NOVEMBER 3, 2022**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 38203-6-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| MICHAEL JOHN HILLMAN, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Michael Hillman challenges his convictions for forgery and

identity theft, arguing: (1) the State failed to establish an adequate evidentiary foundation

for the documents giving rise to his convictions, and (2) the trial court erroneously denied

the exercise of a peremptory challenge under GR 37 in violation of the constitutional right

to a jury trial. We reject both challenges.

The State presented evidence that the documents giving rise to the convictions

had been falsified and that Michael Hillman had been involved in the process of creating

and executing the documents. In the context of a forgery prosecution, this is all that is

required for authentication. Furthermore, because the forged documents were not offered

for the truth of the matter asserted, the rule against hearsay was not a barrier to admission

of the documents into evidence at trial.

No. 38203-6-III
*State v. Hillman*

With respect to GR 37, we disagree with Michael Hillman that the denial of a peremptory challenge implicated his constitutional right to a jury trial. Binding precedent from the United States Supreme Court and the Washington Supreme Court holds that there is no constitutional right to peremptory challenges. Given this circumstance, it is doubtful any error in denying a peremptory challenge under GR 37 is amenable to relief on review. Regardless, the trial court properly sustained the State's GR 37 objection to the peremptory challenge, as the defense did not provide a valid reason for striking the lone Black juror on the venire.

## FACTS

Brothers Michael Hillman and James (Jamie) Hillman opened a flooring business known as Factory Direct Flooring. Michael[1] took on the day-to-day running and financial side of business, while Jamie worked to build a website for Internet sales. The business struggled, and Jamie terminated his involvement after about five years.

Soon after he left the business, Jamie began receiving contacts from collection agencies seeking money owed by Factory Direct Flooring. Jamie was unaware of any outstanding debt, so he talked to his brother. Michael told Jamie not to "'worry about it'"

---

[1] Because of the common surname, we refer to the brothers by their first names.

2

No. 38203-6-III
*State v. Hillman*

and that he was "'taking care of it.'" 2 Report of Proceedings (RP) (Feb. 12, 2020) at 629. According to Jamie, he had similar conversations with Michael each time he was contacted by a collection agency.

Jamie eventually began asking for copies of the loan documents at issue in the collection actions. Upon review of the documents, Jamie discovered his signature had been falsified. Various creditors later served Jamie with lawsuits relating to the unpaid debt. Jamie again asked for copies of the documents. Upon receipt, Jamie noticed the documents contained what appeared to be Michael's genuine signature, but the signature purporting to be that of Jamie was not authentic.

Jamie suspected his brother of wrongdoing and struggled over how to respond. Jamie did not want to declare bankruptcy, so he eventually decided to go to the authorities. Just before meeting with law enforcement, Jamie had a phone conversation with Michael. During the conversation, Michael said he "knew what to do," that he "would say [Jamie] had given him permission to sign the documents." *Id*. at 642. According to Michael, this would allow Jamie to "plead ignorance" so he could "get away from it." *Id*. Jamie disagreed he had ever given Michael permission to sign his name on any documents. He went to speak with law enforcement as planned.

No. 38203-6-III
*State v. Hillman*

The State charged Michael with nine counts of forgery, five counts of identity theft, four counts of theft, and one count of criminal impersonation in the first degree.

Prior to trial, Michael moved in limine to exclude copies of the loan documents giving rise to the State's forgery and identity theft allegations. According to Michael, the State lacked sufficient proof to authenticate the documents or to admit them over a hearsay objection. The trial court overruled Michael's objections.

After ruling on motions in limine, the court proceeded to voir dire. Juror 11 on the venire was a woman and the only Black person on the panel. Michael did not ask any questions of Juror 11 during voir dire, yet moved to strike Juror 11 from the panel using a peremptory challenge. The State objected citing GR 37, Washington's general procedural rule restricting the use of peremptory strikes to exclude potential jurors on the basis of race or ethnicity.

Michael's attorney attempted to justify his peremptory strike in light of the State's GR 37 objection. According to defense counsel, Juror 11 seemed "detached, not interested." 4 RP (Feb. 4, 2020) at 1396. While the State agreed Juror 11 was less animated and answered fewer questions than other jurors, it persisted with the GR 37 objection. The State noted that because questioning had concluded, the State had not received a sufficient opportunity to address Juror 11 regarding attentiveness concerns.

4

No. 38203-6-III
*State v. Hillman*

The trial court sustained the State's GR 37 objection and denied Michael's peremptory strike.

During trial, the jury heard from several defense and prosecution witnesses. While the jury was unable to reach a verdict on 13 of the 19 counts, it did return guilty verdicts on 6 counts: 5 counts of forgery and 1 count of identity theft.

Michael timely appeals.

## ANALYSIS

*Admissibility of evidence*

Michael contends the trial court improperly admitted the loan documents that formed the basis of his six convictions. Consistent with his motion in limine, Michael argues the documents were not authenticated and constituted improper hearsay. We review a trial court's evidentiary rulings for abuse of discretion. *State v. Ellis*, 136 Wn.2d 498, 504, 963 P.2d 843 (1998). Each of Michael's evidentiary claims is addressed in turn.

*Authentication*

The rules for authenticating exhibits are set forth in Title 8 of the Rules of Evidence. Like most other evidentiary rules, the rules regarding authentication are intertwined with the concept of relevance. Generally speaking, a document's relevance

5

No. 38203-6-III
*State v. Hillman*

turns on whether it can be authenticated as being what it purports to be. For example,

in a civil contract dispute, a document purporting to be the parties' contract is relevant

only if it can be authenticated as the actual contract signed and executed by the parties

to the dispute. *See* ROBERT H. ARONSON & MAUREEN A. HOWARD, THE LAW OF

EVIDENCE IN WASHINGTON § 3.02, at 3-2 (5th ed. 2020).

"The bar for authentication of evidence is not particularly high." *United States v.*

*Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007). The proponent need not "rule out all

possibilities inconsistent with authenticity." *Id*. (quoting *United States v. Pluta*, 176 F.3d

43, 49 (2d Cir. 1999)). Instead, there need be only sufficient proof that would allow a

reasonable juror to find in favor of authenticity. *Id*.

In a forgery case, the requirement for authenticity is somewhat unique. When it

comes to forgery, the charge depends on proving that the document is *not* what it purports

to be. *See* 5C KARL B. TEGLAND, WASHINGTON PRACTICE, EVIDENCE LAW AND

PRACTICE § 900.5, at 281-82 (6th ed. 2016). For example, in a case involving a forged

contract, a document's relevance depends not on proving the document is an actual

contract, signed and executed by the genuine parties. Instead, relevance turns on proving

the document is *not* genuine. The proponent of the purportedly forged contract must be

6

No. 38203-6-III
*State v. Hillman*

able to show the document is fake in a way that is relevant to the elements of the legal claims on trial.

In Michael's case, the State was tasked with authenticating loan documents that were signed by Michael, but forged as to Jamie. For each of the six documents at issue, the State presented lay testimony that Michael's signature on each document was legitimate, but Jamie's signature was not. Specifically, Jamie and several of Michael's co-workers testified that Michael's signature on each document appeared consistent with what they knew to be Michael's genuine signature. Jamie further testified that his signature on the documents was not genuine. In addition to lay testimony, the State called a forensic handwriting examiner who testified as to handwriting indicators on each of the documents. According to the examiner, there were indicators on each of the documents suggesting Jamie had not signed his own name, but that the signature attributed to Jamie had been signed by Michael.[2]

---

[2] The handwriting examiner explained he uses a nine-point scale when examining documents. The neutral point is "'inconclusive.'" 2 RP (Feb. 14, 2020) at 933. Indications weighing in favor of attribution range from probable to highly probable to identification. Indications against attribution range from probable to highly probable to exclusion. With respect to the six exhibits at issue on appeal, the examiner testified it was "highly probable" Jamie did not sign the documents. *Id*. at 938, 940, 944, 955, 960, 969. For each of the exhibits, the examiner found at least some indications the signature purporting to belong to Jamie was actually written by Michael. *See id*. at 938 (Michael

No. 38203-6-III
*State v. Hillman*

The State also presented circumstantial evidence tying the loan documents to Michael. Specifically, some of the documents contained personal information such as the Hillman brothers' addresses, phone numbers, and social security numbers. This information would have been known to Michael, but few other individuals. The State's circumstantial evidence also included Michael's various statements to Jamie. According to Jamie, Michael initially expressed familiarity with each of the documents by stating he would take care of the various creditor phone calls. In addition, when Jamie told Michael he was going to the police, Michael acknowledged his responsibility for the documents, stating he would get away with his actions by telling the authorities he believed he had Jamie's permission to sign the documents.

The evidence produced by the State falls within established methods for authenticating written documents. Under ER 901(b)(2), lay persons familiar with an individual's handwriting can authenticate a document signed by that individual.

---

"probably" the source of the Jamie's signature on exhibit 2 (count III)); *Id*. at 940 (Michael "probably" wrote the signature of Jamie on exhibit 3 (count IV)); *Id*. at 954 ("probable" Michael wrote one of Jamie's signatures on exhibit 5 (count VI), another signature was inconclusive); *Id*. at 955 ("indications Michael . . . wrote the signatures [of Jamie]" on exhibit 6 (count VII)); *Id*. at 960 (Michael "probably" wrote Jamie's signature on exhibit 7 (count VIII)); *Id*. at 959 (Michael "probably" the source of Jamie's signature on exhibit 8 (count IX)).

No. 38203-6-III
*State v. Hillman*

Under ER 901(b)(3), an expert witness can authenticate documents as attributable to a particular person. And under ER 901(b)(4), the proponent of a document can offer circumstantial evidence of authenticity such as distinctive characteristics combined with other circumstances. *See State v. Payne*, 117 Wn. App. 99, 106-07, 69 P.3d 889 (2003). Michael points out the State did not present authentication evidence from a witness with knowledge about how the various documents were created. However, testimony of a witness with knowledge is only one of a variety of nonexclusive methods for authentication identified in ER 901(b). A witness need not have been present at the creation of a document in order to authenticate its contents. *State v. Sapp*, 182 Wn. App. 910, 914-16, 332 P.3d 1058 (2014) (holding that photographs and other recordings need not be authenticated by a witness present for their creation).

The evidence presented by the State also tended to show the documents at issue were relevant to the crimes charged. The State's evidence in support of authentication tended to show: (1) each of the documents contained Jamie's forged signature, and (2) each of the documents was attributable to Michael and contained indicators that Michael had forged Jamie's signature. The combined force of these two facts was relevant to helping the State prove the elements of forgery and identity theft. Specifically, the fact that Michael was responsible for documents bearing the forged name of Jamie

9

No. 38203-6-III
*State v. Hillman*

was relevant to the first element of forgery (falsely making a written instrument)[3] and the

first element of identity theft (use of a means of identification of another person).[4]

The State certainly had additional hurdles to proving each of the crimes charged.

For example, both forgery and identity theft require proof of bad intent and the mere fact

that Michael produced documents containing his brother's fake signatures does not

necessarily show bad intent. But the question of whether there is adequate proof of

authenticity is separate from whether the State has produced sufficient evidence to carry

its burden of proof at trial. Here, the State produced enough evidence to show the

documents were relevant to its case. The minimal burden of establishing authentication

required nothing more.

---

[3] The crime of forgery has three elements: (1) the defendant falsely made a written instrument or put off as true a written instrument that had been falsely made, (2) the defendant acted with intent to injure or defraud, and (3) the acts occurred in Washington. 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 130.02, at 655 (5th ed. 2021) (WPIC).

[4] The crime of identity theft has four elements: (1) the defendant knowingly used a means of identification or financial information of another person, (2) the defendant did so with the intent to commit any crime, (3) the defendant knew the means of identification belonged to another person, and (4) the acts occurred in Washington. WPIC 131.06, at 679.

No. 38203-6-III
*State v. Hillman*

*Hearsay*

Michael argues that even if the documents could be deemed authentic, they were nevertheless inadmissible due to the prohibition against hearsay in Title 8 of the Rules of Evidence. We disagree.

Hearsay is defined as an out-of-court statement offered to prove the truth of the matter asserted. ER 801(c). The six loan documents at issue on review do not qualify as hearsay because they were not authored or admitted for the truth of the matters asserted therein. The documents in question purported to be loan documents, agreed to by Michael and Jamie. The State did not proffer the documents to prove Michael and Jamie were in fact obliged to the various companies at issue pursuant to the terms of the documents. Instead, the State proffered the documents to show they were false. The rule against hearsay does not apply in this circumstance.

*GR 37*

Apart from his evidentiary challenges, Michael contends the trial court erred in denying his peremptory challenge to Juror 11 based the State's GR 37 objection. The primary thrust of Michael's argument is that GR 37 cannot be applied to the defense in a criminal case because doing so would deprive the defendant of the right to a jury trial, a right that encompasses the right to exercise peremptory challenges.

11

No. 38203-6-III
*State v. Hillman*

Michael cites no case law holding the right to a jury trial under the state or federal constitutions encompasses the right to exercise peremptory challenges. The United States Supreme Court and the Washington Supreme Court have held the opposite. *See United States v. Martinez-Salazar*, 528 U.S. 304, 311, 120 S. Ct. 774, 145 L. Ed. 2d 792 (2000); *State v. Lupastean*, 200 Wn.2d 26, 30-31, 47-53, 513 P.3d 781 (2022) (right to exercise peremptory challenges is "nonconstitutional").

Given there is no constitutional right to exercise peremptory challenges, it appears unlikely that the erroneous denial of a peremptory challenge is a matter that can be remedied on review. *See State v. Booth*, 22 Wn. App. 2d 565, 581-84, 510 P.3d 1025 (2022). A juror who was not subject to a for-cause challenge is necessarily competent and unbiased. *Id*. at 584-85. Thus, even if the defense can show they should have been allowed their peremptory strike, this is not the type of error that undermines the validity of the final verdict or that warrants reversal of the final judgment. *Id*.; *see also Rivera v. Illinois*, 556 U.S. 148, 129 S. Ct. 1446, 173 L. Ed. 2d 320 (2009); *Lupastean*, 200 Wn.2d at 48 (recognizing that peremptory challenges are not a necessary component of a fair jury trial).

Regardless of whether the erroneous denial of a peremptory strike can be remedied on review, the trial court here did not err in denying Michael's peremptory strike. GR 37

12

No. 38203-6-III
*State v. Hillman*

contemplates a three-step process for reviewing a party's exercise of a peremptory strike:
(1) an assessment of whether the strike raises a concern about improper bias on the basis
of race or ethnicity, (2) if race or ethnicity is implicated, the strike's proponent must
supply a race-neutral justification, and (3) once a justification is provided, the court must
assess "whether an objective observer, aware of implicit, institutional, and unconscious
biases, '*could* view race or ethnicity as *a* factor in the use of the peremptory challenge.'"
*State v. Lahman*, 17 Wn. App. 2d 924, 936, 488 P.3d 881 (2021) (quoting GR 37(e)).[5]
Our review of the three-step process is de novo. *Id.* at 935.

This case is resolved on GR 37's second step. When asked why he struck the lone
Black person from the jury venire, Michael's attorney pointed to the juror's demeanor,
which he deemed reflective of inattention and disinterest. Under GR 37(i), reliance on

---

[5] At trial, Michael's attorney voiced concern that he was being accused of racism.
This was misplaced. A challenge under GR 37 does not involve an allegation of
purposeful discrimination. *Lahman*, 17 Wn. App. 2d at 938. GR 37 is concerned with
impact, not intent. Addressing racism within the justice system requires that each member
of the court family—lawyers and judges alike—humbly assess our own actions and
constantly strive to learn and do better. Letter from Wash. State Supreme Court to
Members of Judiciary & Legal Cmty. at 2 (Wash. Jun. 4, 2020),
https://www.courts.wa.gov/content/publicUpload/Supreme% 20Court%
20News/Judiciary% 20Legal% 20Community% 20SIGNED% 20060420.pdf
[https://perma.cc/QNT4-H5P7]. Racial harm can happen without bad intent. By focusing
on impact instead of fraught allegations of bad intent, GR 37 allows us to lift each other
up and achieve a more just system for all persons.

No. 38203-6-III
*State v. Hillman*

juror demeanor as a basis for a peremptory strike is a factor that has "historically been associated with improper discrimination." If a party intends to justify a peremptory challenge based on ambiguous conduct such as demeanor, the party "must provide reasonable notice to the court and the other parties so that the behavior can be verified and addressed in a timely manner. A lack of corroboration by the judge or opposing counsel verifying the behavior shall invalidate the given reason for the peremptory challenge." *Id*.

Michael's attorney did not bring up his concerns regarding Juror 11's demeanor until after the close of juror questioning. Because of this timing, neither the court nor opposing counsel was able to address Juror 11 regarding her alleged lack of interest or attention. While opposing counsel agreed with Michael's attorney that Juror 11 did not seem animated, counsel did not agree that Juror 11 lacked interest in the proceedings. The failure of Michael's attorney to bring his concerns to the attention of the court and opposing counsel prior to the close of questioning invalidated the purported justification for Michael's peremptory strike. As a result, Michael was unable to satisfy the second step of the GR 37 analysis. The trial court properly denied Michael's request for the peremptory strike.

14

No. 38203-6-III
*State v. Hillman*

CONCLUSION

The judgment of conviction is affirmed.

_____
Pennell, J.

WE CONCUR:

_____          _____
Siddoway, C.J.                                          Lawrence-Berrey, J.

15