IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 39509-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARTIN THOMAS STANLEY, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, J. — During voir dire, the State exercised a peremptory challenge on a potential juror who identified as Puerto Rican. Following defense counsel's GR 37 objection, the State explained that the potential juror was raised by strict grandparents and lacked "life experiences." The trial court concluded that the peremptory challenge was not based on race and overruled the GR 37 objection, excusing the juror.

On de novo review, we reverse. We conclude that an objective observer could view the juror's race or ethnicity as a factor in the use of the peremptory challenge.

BACKGROUND

In February 2021, Martin Stanley spent a day drinking and driving around in his new truck with his friend Michael Timentwa. Both Stanley and Timentwa were under 21 years old. When they ran out of beer, they convinced a friend to buy more. Later that

day, Stanley and Timentwa picked up Isabel Englert, who was 15 years old. Early the

next morning, Stanley swerved and lost control of the truck, causing a roll-over accident

that resulted in Englert's death and Timentwa's injury.

The State charged Stanley with vehicular homicide and vehicular assault. The

case proceeded to a jury trial.

During voir dire, the prosecutor transitioned from general questions to more

specific questions about underage drinking and determining truthfulness, asking the

potential jurors whether they had children who argued, got into trouble, and whether they

had to act as "the investigator, prosecutor and judge all at the same time." Rep. of Proc.

(RP) at 234. Several jurors talked about experiences with their children. A few indicated

that their children were relatively well-behaved. The prosecutor then turned to juror 3,

who explained that she did not have to deal with her children drinking, but acknowledged

that as a teenager she had gone to parties where drinking was involved.

The prosecutor next turned to juror 29 and the following exchange took place:

> [THE PROSECUTOR]: 29. Okay. [juror 29], are you nervous?
> PROSPECTIVE JUROR: No.
> [THE PROSECUTOR]: Okay. Good. I am. I don't know about you.
>  . . .
> [THE PROSECUTOR]: How many kids do you have . . .?
> PROSPECTIVE JUROR: None.
> [THE PROSECUTOR]: None?
> PROSPECTIVE JUROR: (Shakes head.)

2

[THE PROSECUTOR]: Okay. But you were a teenager once before like Number 3, right?

PROSPECTIVE JUROR: Yes.

[THE PROSECUTOR]: Did you ever have fun like Number 3?

PROSPECTIVE JUROR: Nope.

[THE PROSECUTOR]: No?

PROSPECTIVE JUROR: I had very strict grandparents.

[THE PROSECUTOR]: Oh, okay.

PROSPECTIVE JUROR: You had to be home, and if you were not home you were in trouble—

[THE PROSECUTOR]: Well, let's talk—

PROSPECTIVE JUROR: —because you needed to be home.

[THE PROSECUTOR]: Let's talk a little bit about that, what that was like. Did you ever get in trouble?

PROSPECTIVE JUROR: Oh, yes.

[THE PROSECUTOR]: What for?

PROSPECTIVE JUROR: If I was like a minute late I got into trouble. I got caught smoking one time as a teenager and got into trouble because my brother told on me.

[THE PROSECUTOR]: Did you ever get in trouble for something you didn't do?

PROSPECTIVE JUROR: No.

[THE PROSECUTOR]: No? Okay. So whenever you got in trouble was it because somebody caught you?

PROSPECTIVE JUROR: Yes.

[THE PROSECUTOR]: Okay. And when you got caught did you just say you did it?

PROSPECTIVE JUROR: Yes, I did.

[THE PROSECUTOR]: Why?

PROSPECTIVE JUROR:  Because my grandpa knew us very well and knew when we were lying and he told me "You need to tell the truth, otherwise you could get into more trouble."

[THE PROSECUTOR]:  How can you tell if somebody is telling the truth?

PROSPECTIVE JUROR:  Well, for me I try to make eye contact with people, and by the way . . . their eyes will move or body language. That's my personal—that's my experience.

[THE PROSECUTOR]: Because we're human beings, we observe things, right?

PROSPECTIVE JUROR:  Yes.

RP at 248-50.  The prosecutor then questioned two other jurors who discussed experiences with their own children.

After defense counsel's questioning, the prosecutor resumed, using the remaining time to ask about the jurors' experiences in medicine and law enforcement, and whether they could decide the case based on the evidence presented in the courtroom.

The State used a peremptory strike on Juror 29.  Defense counsel objected, citing GR 37.  The prosecutor explained the reasons for the challenge: "The reason we struck her was based upon her answers.  She was raised by her grandparents.  She was not allowed to go anywhere or do anything.  She never did anything wrong.  She has no life experiences.  That was the basis for the challenge."  RP at 328-29.

The court then noted its concern with one of Stanley's peremptory challenges, then returned to discussing the State's preemptory strike on Juror 29:

4

THE COURT: The court noted that defense struck Juror Number 1, who is of Hispanic ancestry, as well as the court noted it appeared that [juror 29] is also of Hispanic background. The court under Rule—General Rule 37 has to make a determination as to the reasons given to justify the peremptory in terms of the totality of the circumstances.

. . .

Again, the court's observation based on the last name [of juror 29] . . .

I'll overrule the objection in light of the fact that the prosecution asked her questions and they've given a reason, based on her upbringing, background, and basically her I'll call it "worldly experiences" as indicated on the record by her questioning.

RP at 328-30. Defense counsel later added, "I don't—the fact that [juror 29's] not worldly is not a basis for overcoming [GR 37]." RP at 333.

Upon further discussion regarding juror 29's ethnicity, the court asked the entire panel to identify their ethnicity. The inquiry revealed that the panel had three members who identified as Hispanic/Latino, three who identified as Native American, and one who identified as half Philipino and half eastern European. Juror 29 raised her paddle when asked if she identified as Hispanic/Latino and Caucasian/White, and explicitly identified herself as "half American and half Puerto Rican." RP at 338.

The court then reiterated its ruling on the GR 37 objection:

As to [juror 29], she's Caucasian and Puerto Rican. It does not appear to the court that . . . [the State's] exercise of the peremptory is based on race; that it's based on life experiences and her responses to the questions. I'll overrule the objection based on that.

RP at 340.

5

The court also addressed Stanley's peremptory strikes of two jurors, one who identified as Hispanic and one who identified as Native American. After some discussion, the court allowed those strikes after defense counsel explained that juror 1 was removed due to his employment with the Department of Licensing—relevant because some of the evidence involved driving records—and juror 49 was struck due to his law enforcement background.

After jurors were excused for cause, 40 jurors remained in the venire. Of those, 7 identified as minorities. Of the 12 jurors sworn in, 2 identified as minorities. The State used 7 peremptories: 6 were white/Caucasian and 1 was the juror who identified as half Puerto Rican at issue (Juror 29). The defense used 5 peremptories: 3 were white/Caucasian and 2 identified as minorities.

Following trial, the jury found Stanley guilty of both charges. Stanley timely appealed.

ANALYSIS

Stanley argues the trial court violated GR 37 by failing to apply the objective observer standard and permitting the State to strike prospective juror 29, who identified as half Puerto Rican. The State argues that no objective observer could view race or ethnicity as a factor in the striking of juror 29, pointing out that the questions posed to juror 29 were no different than other jurors and the State did not disproportionately use peremptory strikes against a given race or ethnicity.

*GR 37 Standards*

Both the Washington and federal constitutions protect the right of a criminal defendant to a fair and impartial jury. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. This right includes the guarantee of a trial free from discrimination, both for the parties and jurors. *Powers v. Ohio*, 499 U.S. 400, 409, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991). GR 37 was implemented not only to forbid purposeful discrimination in jury selection, but to also address the influence of implicit racial bias in jury selection. *State v. Berhe*, 193 Wn.2d 647, 664, 444 P.3d 1172 (2019).

Under GR 37, a party may object to the use of a peremptory challenge by simply citing the rule. Upon objection, the party exercising the peremptory challenge must articulate the reasons for the challenge. GR 37(d). The court must then evaluate these reasons in light of the totality of the circumstances. GR 37(e). "If the court determines that an objective observer *could* view race or ethnicity as a factor in the use of the peremptory challenge, then the peremptory challenge shall be denied." *Id*. (emphasis added).

An "objective observer" is one who "is aware that implicit, institutional, and unconscious biases, in addition to purposeful discrimination, have resulted in the unfair exclusion of potential jurors in Washington State." GR 37(f). In the context of an objective observer, the word "can" has been defined as "'made possible or probable by circumstances.'" *Simbulan v. Nw. Hosp. & Med. Ctr.*, 32 Wn. App. 2d 164, 176, 555

7

P.3d 455 (2024) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 323 (2002)).

Because the GR 37 analysis is purely objective, we review such a claim de novo. *State v. Lahman*, 17 Wn. App. 2d 925, 935, 488 P.3d 881 (2021).

GR 37(g)[1] lists five nonexclusive circumstances relevant to assessing the nature of a peremptory challenge:

> (i) the number and types of Questions posed to the prospective juror, which may include consideration of whether the party exercising the peremptory challenge failed to Question the prospective juror about the alleged concern or the types of Questions asked about it;

> (ii) whether the party exercising the peremptory challenge asked significantly more Questions or different Questions of the potential juror against whom the peremptory challenge was used in contrast to other jurors;

> (iii) whether other prospective jurors provided similar answers but were not the subject of a peremptory challenge by that party;

> (iv) whether a reason might be disproportionately associated with a race or ethnicity; and

> (v) whether the party has used peremptory challenges disproportionately against a given race or ethnicity, in the present case or in past cases.

---

[1] The party raising a GR 37 challenge on appeal is responsible for ensuring that the record is sufficient for this court to apply GR 37. This means the record should indicate which jurors were seated on the panel and which jurors were excused on peremptory challenge. Here, following oral argument, Stanley supplemented the record with the jury sheet that contained this information.

The rule also specifies seven presumptively invalid justifications for peremptory challenges.[2]  GR 37(h).  In addition, if a prosecutor exercising a peremptory strike mischaracterizes the prospective juror's answers it could support an inference of implicit bias.  *See State v. Jefferson*, 192 Wn.2d 225, 250-51, 429 P.3d 467 (2018).  "[T]he remedy for the erroneous exclusion of a juror from service on the basis of race or ethnicity is reversal and remand."  *Lahman*, 17 Wn. App. 2d at 929.

*Analysis*

In Stanley's case, the first step was met when defense counsel objected to the State's use of a peremptory strike against juror 29 on the basis of GR 37.  Juror 29 identified herself as either Hispanic or Caucasian and noted that she was half Puerto Rican.  This was "enough to raise the concern that an objective observer could perceive Juror [29] as a racial or ethnic minority."  *See  Id.* at 935.

Turning to the second step, the party exercising the strike must offer a race-neutral justification.  *Id.*; GR 37(d).  Here, the prosecutor explained the reason for the

---

[2] (i) having prior contact with law enforcement officers;
(ii) expressing a distrust of law enforcement or a belief that law enforcement officers engage in racial profiling;
(iii) having a close relationship with people who have been stopped, arrested, or convicted of a crime;
(iv) living in a high-crime neighborhood;
(v) having a child outside of marriage;
(vi) receiving state benefits; and
(vii) not being a native English speaker.

peremptory: "She was raised by her grandparents. She was not allowed to go anywhere or do anything. She never did anything wrong. She has no life experiences." RP at 329. Given this information, we must determine whether an objective observer "*could* view race or ethnicity as *a* factor in the use of the peremptory challenge." GR 37(e) (emphasis added).

As an initial matter, we note that despite the trial court's cognizance of GR 37's standard, it appears that the court applied the wrong standard. The trial court overruled Stanley's GR 37 objection after concluding that the State's exercise of the peremptory was not based on race. This was error under GR 37(e). "The court need not find purposeful discrimination to deny the peremptory challenge." GR 37(e). The standard is not whether the peremptory challenge was based on race. Rather, the standard is whether an objective observer "*could* view race or ethnicity as *a* factor in the use of the peremptory challenge." GR 37(e) (emphasis added).

On appeal Stanley contends this standard is met. In support of his argument he contends the State mischaracterized juror 29's answers, noting that juror 29 was never asked about her life experiences, did not state that she was raised by her grandparents, did not say that she was not allowed to go anywhere or do anything, and did not claim that she never did anything wrong. He compares his case to *Lahman*.

In *Lahman*, the prosecutor attempted to use a peremptory challenge against a 23-year-old prospective juror with an Asian surname. 17 Wn. App. 2d at 929. The

10

prosecutor's justification for the strike was that the juror was young and did not have

"life experiences." *Id*. at 931. This court held that the trial court erred in overruling the

GR 37 objection, reasoning that the juror was not questioned about his life experiences

and was not afforded an opportunity to explain himself and the circumstances due to the

limited questions he was asked. *Id*. at 936. In addition, we found that the prosecutor's

focus on the juror's youth and life experiences played into some improper stereotypes

about Asian-Americans. *Id*. at 937-38.

Applying the correct standard to the record before us, we conclude that an

objective observer could conclude that juror 29's race or ethnicity was a factor in the

State's peremptory. Our conclusion is based on the application of several factors. First,

the prosecutor's justifications for the strike mischaracterized juror 29's responses. GR

37(g)(i). Although the State contends that its characterization of juror 29's comments

was reasonable given the limited time for voir dire, juror 29 never said that she was

raised by her grandparents, nor did she say that she was not allowed to go anywhere or do

anything.

Similarly, juror 29 did not state, as the prosecutor put it, that she "never did

anything wrong." RP at 329. In fact, juror 29 gave a specific example of getting in

trouble and doing something wrong: she got in trouble for smoking as a teenager.

Moreover, like the prosecutor in *Lahman*, the prosecutor here never asked juror 29 about

her "life experiences" either as a minor or as an adult, making the justification about juror 29 having "no life experiences" unsupported by the record. GR 37(g)(i).

In addition, we note that several of the seated jurors failed to indicate that they had life experiences. The prosecutor asked a series of questions to several jurors, including juror 29, to determine how the jurors would judge credibility and whether the jurors had experience with underage drinking. While the State asked juror 29 similar questions as other jurors, and juror 29 denied having experience with underage drinking, her answers were not unique.

Similar to juror 29, five of the seated jurors were asked about their experience with underage drinking either with their children or their own experience. Four of those five jurors indicated that they did not have issues with their children drinking as teenagers. Juror 3 said her children were "pretty easy" and did not have issues with drinking, though she admitted that she drank alcohol when she was a teenager. Juror 6 had raised four children and acknowledged inter-family squabbles but said nothing about drinking issues. Juror 13 said her children did not have drinking issues as teenagers but drove recklessly on motorcycles. And juror 36 raised three children and said it was a roller coaster when they were teenagers, with a few missed curfews and traffic tickets, but no experience with underage drinking. Juror 24 was the only juror who confessed that her children struggled as teenagers with drinking and law enforcement contacts.

12

Finally, we note that a justification based on lack of "life experience" is vague and similar to the presumptively invalid reasons listed in the rule is subject to scrutiny under GR 37.

Considering the totality of the circumstances, we conclude that an objective observer could have viewed juror 29's race or ethnicity as a factor in the prosecutor's use of the peremptory challenge. As we have said before, our determination does not mean that the prosecutor's peremptory challenge was subjectively based on race or ethnicity. *See Lahman*, 17 Wn. App. 2d at 938. "GR 37 was written in terms of possibilities, not actualities . . . peremptory strikes exercised against prospective jurors who appear to be members of racial or ethnic minority groups must be treated with skepticism and considerable caution." *Id*.

Ultimately, "[b]ecause 'the Constitution forbids striking even a single prospective juror for a discriminatory purpose,' mistakenly allowing a party to dismiss a juror for reasons of race or ethnicity requires reversal and remand for a new trial." *Id*. at 932 (quoting *United States v. Vasquez-Lopez*, 22 F.3d 900, 902 (9th Cir. 1994)). "This remedy applies regardless of the strength of the prosecutor's case or the hardship to victims or witnesses." *Id.*

Reversed and remanded for a new trial.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Cooney, J.