IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 38980-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSE CARLOS HERNANDEZ, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

COONEY, J. — Jose Carlos Hernandez was tried by a jury on the charges of attempting to elude a police vehicle and driving under the influence of intoxicating liquor and/or drugs (DUI). At the conclusion of voir dire, Mr. Hernandez raised a GR 37 objection to the State's use of a peremptory challenge against venire juror 11, who is Latino. The trial court overruled the objection and Mr. Hernandez was eventually found guilty of attempting to elude a pursuing police vehicle and not guilty of DUI. Mr. Hernandez appeals.

We affirm.

BACKGROUND

On February 20, 2020, Mr. Hernandez was charged with attempting to elude a pursuing police vehicle and DUI. The facts leading to his prosecution are not relevant to

this appeal. Mr. Hernandez elected to proceed to a jury trial on both counts. During voir

dire, the trial court asked the prospective jurors if they had a personal experience with

attempting to elude a police vehicle or DUI. Juror 11 responded by asking whether the

question included family members. The court responded, "Yes. It can be if you have a

close family member who's had personal experience with something. And now you've

let us know. Thank you [juror] 11." Rep. of Proc. (RP) at 82.

The court then asked the prospective jurors, "[I]s there anybody who has such

strong feelings about their personal experience with a similar type of case that they do not

believe they could be fair and impartial in a case like this?" RP at 83. Juror 11, along

with four other venire jurors, jurors 40, 48, 58, and 64, responded in the affirmative. The

court followed up with juror 11 by asking, "So, sir, we're trying to not pry too far into it.

Your indication today is you're concerned with your last answer whether you could be

fair and impartial in a case like this; is that correct?" RP at 83. Again, juror 11

responded in the affirmative. The court then asked juror 11:

> And understanding that a juror is required to listen and pay attention to just
> the testimony or evidence presented in this case and just the law as I give it
> to you as the judge and taking the evidence and makeup of the law and
> making the decision based solely upon that and nothing else, are you able to
> take what other experiences you might have and leave that outside the
> courtroom and leave that outside the courtroom and just make a decision
> based solely upon the matters before you as a juror in this case?

2

RP at 83-84. Juror 11 responded, "I believe not sir." RP at 84. The court asked similar questions of venire jurors 40, 48, 58, and 64.[1]

After the five venire jurors declared their inability to remain fair and impartial, the State moved to excuse them for cause. The court reserved ruling on the State's motion until Mr. Hernandez's attorney had an opportunity to question the jurors.

Following the trial court's questioning, the State inquired of the prospective jurors. The State asked, "How many of you here have been pulled over by police officers for speeding, you know, missing a taillight?" RP at 119. After receiving a few responses, the State clarified, "The reason why I'm asking you this is because there's two police officers that will testify in this case. I just want to make sure that that doesn't carry over the bad experience with law enforcement previously." RP at 120. Juror 11 responded to the State's question. The State then asked,

> Anybody else? Number 11. I asked number three because we had two police officers testifying in this case, was your bad experience such that you will not be able to be open minded to what the officers will be testifying to in this case? Or will you say I had a bad experience, you know, I don't believe a single word what any police officer tells me?

RP at 121. Juror 11 responded, "It would be extremely difficult to balance that out. So I would say no just because I had a bad experience with law enforcement in the past, so I would say no." RP at 121. Juror 11 continued,

---

[1] Unlike juror 11, venire jurors 40, 48, 58, and 64 either had a background in law enforcement or expressed a bias in favor of law enforcement.

I mean, like, I have much respect for law enforcement and stuff like that.
It just depends on, like, the case, like, of course, I hear, like, for example,
I got pulled over for too dark of a tint, but my windows were rolled down.
I'm like what is going on here?

RP at 122. The State then inquired,

So would you be able to be open minded with those officers who testify in
this trial despite your bad experience with the officer who pulled you over
at that time?

RP at 122. Juror 11 responded, "It would be difficult. *But I would say no, to be honest.*"

RP at 122 (emphasis added).

Defense counsel then questioned the prospective jurors but did not inquire of

juror 11. After defense counsel concluded, the State was allowed a second opportunity to

follow up with the venire. The State did not ask any further questions of juror 11. When

the State finished, defense counsel was given a second opportunity to question the venire.

Defense counsel asked, "Does anyone know someone that's been charged with a crime?"

RP at 151. After juror 11 responded, the following exchange occurred:

> [JUROR 11]: Yeah. You know, they went to Court and they were
> guilty for it. That's all I know about that.
> [DEFENSE COUNSEL]: Have you ever been accused of doing
> something that maybe you didn't do? It could be anything. It doesn't have
> to be a crime.
> [JUROR 11]: Yes.
> [DEFENSE COUNSEL]: What happened in that situation, one of
> those situations?
> [JUROR 11]: I just told them what it was, how it was and wasn't
> guilty of it. They just played its course and everything went well.
> [DEFENSE COUNSEL]: It was like a disagreement with a friend or
> a relationship?

[JUROR 11]: Yes.

[DEFENSE COUNSEL]: So you were able to talk about what exactly happened and give your side of the story?

[JUROR 11]: Yes.

[DEFENSE COUNSEL]: And then you resolved it?

[JUROR 11]: Correct.

[DEFENSE COUNSEL]: Did they apologize to you for accusing you of something you didn't do?

[JUROR 11]: For sure, yeah.

[DEFENSE COUNSEL]: Okay. You also talked about that you don't think you could be fair because of your interactions with law enforcement.

[JUROR 11]: Correct.

[DEFENSE COUNSEL]: I want to talk a little bit about that. Was it either of the police officers that [the] Judge . . . named for this case?

[JUROR 11]: It was neither of them.

[DEFENSE COUNSEL]: Do you think that all cops or all police officers are the same?

[JUROR 11]: No. There's some good officers out there. But some officers are a little bit biased.

[DEFENSE COUNSEL]: That's like everything in life you agree with?

[JUROR 11]: Yes.

[DEFENSE COUNSEL]: In any job and any field sometimes there's bad apples.

[JUROR 11]: For sure, yeah.

[DEFENSE COUNSEL]: And sometimes people just make mistakes, right?

[JUROR 11]: Yeah.

RP at 151-53.

At the conclusion of defense counsel's questioning, the State renewed its earlier motion to strike jurors 11, 40, 48, 58, and 64 for cause. Defense counsel agreed that jurors 40, 48, 58, and 64 should be struck for cause, but objected to striking juror 11.

After hearing argument from counsel, the court excused venire jurors 40, 48, 58, and 64

for cause and denied the State's motion to excuse juror 11, reasoning:

> THE COURT: His ultimate answers were particularly definitive or
> I'll say equivocal. However, I'm not convinced that based on his answers
> that he demonstrated an absolute bias for or against law enforcement. He
> did indicate at some point during the questions that he would be willing to
> be open minded and listen to the evidence and testimony that was
> presented. So based on that record I'm going to—number 11, the motion to
> excuse is denied. Number 11 will remain on.

RP at 163-64.

When it came time for peremptory challenges, the State moved to exclude

juror 11. Defense counsel raised a GR 37 objection claiming:

> The state has elected to strike juror number 11 . . . . I just want to make a
> record. My client is an [sic] Hispanic male. [Juror 11] by all accounts
> appears to reflect my client's ethnicity and gender in the community. He
> appears to me to be the only Hispanic male that is seated within the first 12,
> at least so far as I can tell. And I think just based on that, I just want to
> make a record that I'm—that's the basis for the challenge. It doesn't
> appear that he has a representative from the community on the jury at this
> point based on that strike. That's the record I'd like to make.

RP at 167-68. After hearing from the State, the trial court overruled the objection. The

court held:

> Well, at least as far as a challenge for cause, I agree that he was
> rehabilitated. That's why I denied the state's motion to excuse for cause.
> I go through general Rule 37. And, again, I'm looking at those
> factors. There's also other circumstances to be considered. This is
> under G. Let me read that to myself again. Hold on.
> So under G, circumstances to be considered, sub one, the number
> and types of questions posed to the prospective juror, which may include

6

consideration of whether the party exercising the peremptory challenge failed to question the perspective [sic] juror about the alleged concern.

I can't make that finding because I think that the state did ask questions about that. Or certainly it was elicited enough that we could understand that particular jurors or panelists answers or opinions.

Two, whether the party exercising the peremptory challenge asked significantly more questions or different questions of the potential juror. So I guess one is you didn't do enough questions. And the other one, you did too many questions. I'm not sure which I'm supposed to be looking at.

Three, whether other prospective jurors provided similar answers but were not subject to peremptory challenges. We don't know that because we haven't gone through all the peremptory challenges yet.

Four, whether a reason might be—

. . . .

Four. Whether a reason might be disproportionately associated with race or ethnicity. I don't know these days. I can't—that would be me then judging how certain races or ethnicities would perceive law enforcement. And I can't say how somebody would or would not do it. There's plenty of folks who are of European ethnicity who have a very strong distrust of a lot of members of the Washington State government, especially if they have a D at the end of their name, they're a representative. So I just don't know, especially in this community. I can't answer that one.

And then five, whether the party has used peremptory challenges disproportionately against a given race. We haven't gotten through that. Or it says in the present or in past cases. I have no way of knowing about . . . the state's use of them in the past that would suggest one way or the other. And we haven't—again, that's not ripe.

So I am under H1 and 2, those would be presumptively invalid reasons to strike. However, the additional reasons that the state has given is because of the—whether he could be fair and impartial. And while that was not enough for cause, that still could be a reason. It could say I don't trust cops, but it doesn't say that I wouldn't—the person said I couldn't be fair and impartial. And at this point I'm going to indicate that just because somebody has acquiesced to the questions in Voir Dire does not necessarily mean a party has to take that full freight and believe everything they say. There is an opportunity then to use. And I will say that the state did make —made its exercise for cause. When that was denied, that is a valid reason to use a peremptory challenge if it's otherwise been denied for cause. I

7

have said that on the record before.  I'm denying it for cause.  That's why
you have peremptory challenges.
    So on that note I am denying defense motion as to under Rule 3.7
[sic] as number to number 11. And the peremptory exercise will stand.

RP at 173-77.

In addition to juror 11, at least two jurors of a cognizable racial or ethnic group

were on the venire, juror 5, Mr. Longtimesleeping, and juror 8, Ms. Munoz.  Mr.

Hernandez used a peremptory challenge to strike Ms. Munoz from the panel.  Mr.

Longtimesleeping was empaneled on the jury.

The jury found Mr. Hernandez guilty of attempting to elude a pursuing police

vehicle and not guilty of DUI.  Mr. Hernandez appeals.

ANALYSIS

Mr. Hernandez claims that the trial court erred by allowing the State to use a

peremptory challenge on juror 11 over his GR 37 objection.  The State responds, arguing

that an objective observer could not have viewed race or ethnicity as a factor in the

State's use of a peremptory challenge against juror 11.

We review the trial court's application of GR 37 de novo.  *State v. Orozco*, 19 Wn.

App. 2d 367, 374, 496 P.3d 1215 (2021).  The state and federal constitutions protect the

right of the criminally accused to a fair and impartial jury.  U.S. CONST. amend. VI;

WASH. CONST. art. I, § 22.  Prospective jurors are guaranteed the right to not be excluded

from serving on a jury due to discrimination. *Powers v. Ohio*, 499 U.S. 400, 409, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991).

CrR 6.4(e) governs peremptory challenges, granting the State and defense the ability to exclude a limited number of venire jurors without giving a reason. These peremptory challenges allow the parties to select jurors who they believe to be the best suited to hear the case. *Orozco*, 19 Wn. App. 2d at 373. Historically, the use of peremptory challenges has been fraught with racial bias. *State v. Lahman*, 17 Wn. App. 2d 925, 932, 488 P.3d 881 (2021).

"Since 1879, the United States Supreme Court has recognized that race discrimination in the selection of jurors violates the Fourteenth Amendment [to the United States Constitution]'s guaranty of equal protection." *State v. Saintcalle*, 178 Wn.2d 34, 43, 309 P.3d 326 (2013) (plurality opinion) (citing *Strauder v. West Virginia*, 100 U.S. (10 Otto) 303, 309-10, 25 L. Ed. 664 (1879)), *abrogated in part on other grounds*, *City of Seattle v. Erickson*, 188 Wn.2d 721, 398 P.3d 1124 (2017). In an effort to combat the problem of peremptory challenges facilitating racial discrimination during jury selection, the United States Supreme Court, in *Batson v. Kentucky*, 476 U.S. 79, 97, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), established a "three-part test to replace the 'crippling burden of proof' previously required when attempting to prove a racially motivated strike." *Erickson*, 188 Wn.2d at 726 (quoting *Saintcalle*, 178 Wn.2d at 43-44). As applied in the Evergreen State, the *Batson* test provides:

9

> First, the defendant must establish a prima facie case that "gives rise to an inference of discriminatory purpose." Second, if a prima facie case is made, the burden shifts to the prosecutor to provide an adequate, race-neutral justification for the strike. Finally, if a race-neutral explanation is provided, the court must weigh all relevant circumstances and decide if the strike was motivated by racial animus.

*Id.* at 726-27 (citation omitted) (quoting *Batson*, 476 U.S. at 94).

Even in light of the Supreme Court's attempt to eradicate discrimination from jury selection, the "various tests that were used to identify and eliminate racial discrimination . . . proved ineffective because such tests were 'equipped to root out only "purposeful" discrimination, which many trial courts probably understand to mean conscious discrimination.'" *State v. Berhe*, 193 Wn.2d 647, 664, 444 P.3d 1172 (2019) (quoting *Saintcalle*, 178 Wn.2d at 48). To address this shortcoming, in 2018 the Washington State Supreme Court adopted GR 37. *Id.* GR 37 was implemented not only to forbid purposeful discrimination in jury selection, but to also address the influence of implicit racial bias in jury selection. *Id.* Instead of requiring a showing of purposeful discrimination, GR 37(e) provides, "If the court determines that an objective observer could view race or ethnicity as a factor in the use of [a] peremptory challenge, then the peremptory challenge shall be denied." An objective observer is one who "is aware that implicit, institutional, and unconscious biases, in addition to purposeful discrimination, have resulted in the unfair exclusion of potential jurors in Washington State." GR 37(f).

Under GR 37(c), a party can object to the use of a peremptory challenge by simply citing the rule. Once an objection is made, the party exercising the peremptory challenge "shall articulate the reasons that the peremptory challenge has been exercised." GR 37(d). "The court shall then evaluate the reasons given to justify the peremptory challenge in light of the totality of circumstances." GR 37(e). "If the court determines that an objective observer could view race or ethnicity as a factor in the use of the peremptory challenge, then the peremptory challenge shall be denied." *Id.*

GR 37 does not require a showing of purposeful discrimination but rather whether the possibility of discrimination could exist in the eyes of an objective observer. *Lahman*, 17 Wn. App. 2d at 938. In making its determination, GR 37(g) provides five nonexclusive factors for the trial court to consider:

> (i) the number and types of Questions posed to the prospective juror, which may include consideration of whether the party exercising the peremptory challenge failed to question the prospective juror about the alleged concern or the types of Questions asked about it;
> (ii) whether the party exercising the peremptory challenge asked significantly more Questions or different Questions of the potential juror against whom the peremptory challenge was used in contrast to other jurors;
> (iii) whether other prospective jurors provided similar answers but were not the subject of a peremptory challenge by that party;
> (iv) whether a reason might be disproportionately associated with a race or ethnicity; and
> (v) whether the party has used peremptory challenges disproportionately against a given race or ethnicity, in the present case or in past cases.

Further, in order to combat the historical reasons peremptory challenges were used to discriminate, GR 37(h) lists seven presumptively invalid reasons for exercising a peremptory challenge. Two presumptively invalid reasons are present in this appeal: having prior contact with law enforcement officers, and expressing a distrust of law enforcement or a belief that law enforcement officers engage in racial profiling. GR 37(h)(i), (ii).

When deciding a GR 37 objection, "[a] trial judge must view the use of a peremptory strike on a member of a racially cognizable group with 'skepticism and considerable caution.'" *Orozco*, 19 Wn. App. 2d at 377 (quoting *Lahman*, 17 Wn. App. 2d at 938). This is especially so if the strike is used to remove the sole member of a racially cognizable group. If a juror reveals some bias, although insufficient bias to remove for cause, a trial judge is in a stronger position to deny an objection to a peremptory challenge. *Id.*

The State used a peremptory challenge against juror 11, a member of a cognizable racial or ethnic group. Mr. Hernandez properly raised a GR 37 objection. After the State responded to the objection, the trial court considered the criterion of GR 37(g) and GR 37(h). In doing so, the court noted that juror 11 was not the only juror on the venire of a cognizable racial or ethnic group. The court remarked that the State did not ask too many or too few questions of juror 11. The court struggled with whether the State disproportionately used peremptory challenges against a given race or ethnicity because

the State had not exhausted all of its peremptory challenges at the time of the GR 37

objection. Ultimately, the State did not attempt to strike any other venire jurors of color.

The trial court then concluded:

> However, the additional reasons that the state has given is because of
> the—whether he could be fair and impartial. And while that was not
> enough for cause, that still could be a reason. It could say I don't trust
> cops, but it doesn't say that I wouldn't—*the person said I couldn't be fair
> and impartial.* And at this point I'm going to indicate that just because
> somebody has acquiesced to the questions in Voir Dire does not necessarily
> mean a party has to take that full freight and believe everything they say.

RP at 176 (emphasis added).

Although we addressed the trial court's reasoning in overruling Mr. Hernandez's

GR 37 objection, our review is de novo. Mr. Hernandez posits that our holding in

*Orozco* is instructive. We disagree. Unlike the facts presented here, in *Orozco* the State

failed to provide a race-neutral justification for the challenge. There, the State had

previously prosecuted "venire juror 25 for 'minor crimes . . . and also her name has

appeared in a number of police reports as associating with people that [the State] believe

have been engaged in criminal activity.'" *Id*. at 376 (first alteration in original).

Moreover, in *Orozco*, venire juror 25 was the sole member of a racially cognizable group

on the venire and stated during voir dire "she could be fair and impartial to both sides."

*Id*. at 377. Under the facts presented in *Orozco*, an objective observer could view race as

a factor in the State's use of its peremptory strike of venire juror 25.

13

Here, an objective observer could not have viewed race or ethnicity as a factor in the State's use of a peremptory challenge against juror 11. First, juror 11 was not the only juror on the venire of a cognizable racial or ethnic group. There were at least 3 venire jurors of a cognizable racial or ethnic group seated within the first 12 members of the venire. The State did not attempt to strike any other venire jurors of color. Notably, Mr. Hernandez used a peremptory challenge to strike venire juror 8, a Latina, from the panel.

Secondly, the State did not ask too many or too few questions of juror 11. The number and type of questions asked by the State of juror 11 were similar to those asked of the other prospective jurors. Compellingly, juror 11 and four other venire jurors all claimed they lacked the ability to remain fair and impartial, yet juror 11 was the only prospective juror of the five not to be struck for cause.

Most convincingly, on at least three occasions, juror 11 stated, under oath, that he could not be fair and impartial. In response to the court asking, "[a]re you able to take what other experiences you might have and leave that outside the courtroom . . . and just make a decision based solely upon the matters before you as a juror in this case," juror 11 responded, "I believe not sir." RP at 83-84. The State followed up with juror 11, asking, "So would you be able to be open minded with those officers who testify in this trial despite your bad experience with the officer who pulled you over at that time?" RP at 122. Juror 11 invoked his own sincerity in answering, "It would be difficult. *But I would*

14

No. 38980-4-III
*State v. Hernandez*

*say no, to be honest.*" *Id.* (emphasis added). Juror 11 relayed the same sentiment to defense counsel when asked, "You also talked about that you don't think you could be fair because of your interactions with law enforcement." RP at 152. Juror 11 responded, "Correct." *Id.*

The facts presented in this appeal are unlike the pivotal cases wherein peremptory challenges were used as a means of discriminating against venire jurors of cognizable racial or ethnic groups. In each of the cases cited by the parties,[2] none of the affected jurors claimed they could not be fair and impartial. Here, juror 11 consistently vocalized his inability to be fair and impartial. A de novo review of the record persuades us that an objective observer could not have viewed race as a factor in the State's use of the peremptory challenge of juror 11.

Affirmed.

Cooney, J.

I CONCUR:

Lawrence-Berrey, J.

---

[2] *Lahman*, 17 Wn. App. 2d 925; *State v. Listoe*, 15 Wn. App. 2d 308, 475 P.3d 534 (2020); *State v. Omar*, 12 Wn. App. 2d 747, 460 P.3d 225 (2020); *Orozco*, 19 Wn. App. 2d 367; *State v. Tesfasilasye*, 200 Wn.2d 345, 518 P.3d 193 (2022); *Berhe*, 193 Wn.2d 647; *Erickson*, 188 Wn.2d 721; *State v. Booth*, 22 Wn. App. 2d 565, 510 P.3d 1025 (2022); *State v. Booth*, 24 Wn. App. 2d 586, 521 P.3d 196 (2022), *review denied*, 1 Wn.3d 1006, 526 P.3d 849 (2023); *State v. Jefferson*, 192 Wn.2d 225, 429 P.3d 467 (2018) (plurality opinion).

15

FEARING, C.J. (dissenting) —

If a for-cause challenge cannot be sustained, counsel would be well advised to exercise restraint and accept the juror on the panel. *State v. Orozco*, 19 Wn. App. 2d 367, 380, 496 P.3d 1215 (2021) (Pennell, J. concurring).

Because the State peremptorily removed a Latinx juror from Jose Hernandez's petit jury based on the juror's former contact with law enforcement and based on his distrust for law enforcement, but the juror's bias was not so strong that the trial court removed the juror for cause, I dissent. I would reverse and remand for a new trial.

As his name suggests, appellant Jose Hernandez is Latinx. RP at 167-68. Juror 11 is also Hispanic. RP at 167-68. Although a Native American and another Latinx eventually sat on the trial jury and the defense preemptorily removed one Latina, juror 11 was the only Latinx in the first twelve jurors in the jury pool. RP at 167-68.

I repeat, from the majority opinion, critical passages from voir dire relating to juror 11.

> THE COURT: We'll start with number 11, please. So, sir, we're trying to not pry too far into it. Your indication today is you're concerned with your last answer whether you could be fair and impartial in a case like this; is that correct?
> PROSPECTIVE JUROR [11]: Yes.
> THE COURT: And understanding that a juror is required to listen and pay attention to just the testimony or evidence presented in this case and just the law as I give it to you as the judge and taking the evidence and makeup of the law and making the law and making the decision based solely upon that and nothing else, *are you able to take what other experiences you might have and leave that outside the courtroom and just*

*make a decision based solely upon the matters before you as a juror in this
case?*
   *PROSPECTIVE JUROR: I believe not, sir.*
   THE COURT: You don't think so. Okay. The attorneys may
followup on that. Thank you.

Report of Proceedings (RP) at 82-83 (emphasis added).

   MR. CHEN: . . . Number 11. I asked number three because we had
two police officers testifying in this case, was your bad experience such
that you will not be able to be open minded to what the officers will be
testifying to in this case? *Or will you say I had a bad experience, you
know, I don't believe a single word what any police officer tells me?*
   *PROSPECTIVE JUROR [11]: It would be extremely difficult to
balance that out. So I would say no* just *because I had a bad experience
with law enforcement in the past*, so I would say no.
   MR. CHEN: So no matter what we tell you, you still will—
   PROSPECTIVE JUROR: I mean, like, *I have much respect for law
enforcement and stuff like that. It just depends on, like, the case*, like, of
course, I hear, like, for example, I got pulled over for too dark of a tint, but
my windows were rolled down. I'm like what is going on here?
   MR. CHEN: I guess what I'm saying is I'm assuming you've heard
the name of the officers that will be testifying in this case, those are not the
same officers who pulled you over for that tinting of the window; is that
correct?
   PROSPECTIVE JUROR: Correct.
   MR. CHEN: *So would you be able to be open minded with those
officers who testify in this trial despite your bad experience with the officer
who pulled you over at that time?*
   *PROSPECTIVE JUROR: It would be difficult. But I would say no,
to be honest.*

RP at 121-22 (emphasis added).

   MR. ALLEN [Defense counsel]: Okay. You [juror 11] also talked
about that you don't think you could be fair because of your interactions
with law enforcement.
   PROSPECTIVE JUROR [11]: Correct.
   MR. ALLEN: I want to talk a little bit about that. Was it either of
the police officers that Judge Swan named for this case?
   PROSPECTIVE JUROR: It was neither of them.

2

MR. ALLEN: *Do you think that all cops or all police officers are the same?*
PROSPECTIVE JUROR: *No. There's some good officers out there. But some officers are a little bit biased.*
MR. ALLEN: That's like everything in life you agree with?
PROSPECTIVE JUROR: Yes.
MR. ALLEN: In any job and any field sometimes there's bad apples.
PROSPECTIVE JUROR: For sure, yeah.
MR. ALLEN: And sometimes people just make mistakes, right?
PROSPECTIVE JUROR: Yeah.

RP at 152-53 (emphasis added).

The State moved to excuse juror 11 for cause:

THE COURT: . . . Next we have numbers 11, 40, 48, 58 and 64. This is the state's previous motion to excuse for cause. Mr. Allen wanted to have a chance to speak with them. Mr. Allen, at this point is there any— Mr. Chen, your motions on each of those individuals still remains, correct?
MR. CHEN: Yes.
THE COURT: Mr. Allen, do you have an objection as to any of those individuals being excused for cause?
MR. ALLEN: No, but for number 11. I believe based on the conversation that we held, I believe even Mr. Chen spoke to him, that there is no for cause basis to remove him at this point in time. He indicated that he would be able to—I believe he indicated that he would be able to remove any bias. *He said that he thought that not all officers are the same people, some make decision bad decisions and some are good, just like in any profession and any walk of life.* I think he should remain based off that conversation.
THE COURT: Mr. Chen, any further argument from the state as to 11?
MR. CHEN: Just that his response to my questions were that he— despite the fact that two officers will be testifying in this case and *his bad experience with law enforcement*, it's still problematic for him despite the fact that two officers will be testifying in this case and *his bad experience with law enforcement*, it's still problematic for him if he were to serve on this jury. I still move to excuse number nine [11?].

RP at 162-63 (emphasis added).

The trial court denied the motion to excuse juror 11 for cause:

>    THE COURT: His ultimate answers were particularly definitive or I'll say equivocal.  However, I'm not convinced that based on his answers that he demonstrated an absolute bias for or against law enforcement.  *He did indicate at some point during the questions that he would be willing to be open minded and listen to the evidence and testimony that was presented.*  So based on that record I'm going to—number 11, the motion to excuse is denied.  Number 11 will remain on.

RP at 162-63 (emphasis added).

The State exercised a peremptory to remove juror 11.  Jose Hernandez objected to

the peremptory challenge, but the court permitted the excusal.

>    THE COURT: Mr. Allen, you have a question or concern about a peremptory challenge that's been exercised by the state.
>    MR. ALLEN: Yes, Your Honor.
>    THE COURT: Go ahead.
>    MR. CHEN: The state also has a *Batson* Challenge.
>    MR. ALLEN: Yes, Your Honor.  The state has elected to strike juror number 11, Mr. Daniel Garcia.  I just want to make a record.  My client is an Hispanic male.  Mr. Daniel Garcia by all accounts appears to reflect my client's ethnicity and gender in the community.  He appears to me to be the only Hispanic male that is seated within the first 12, at least so far as I can tell.  And I think just based on that, I just want to make a record that I'm— that's the basis for the challenge.  It doesn't appear that he has a representative from the community on the jury at this point based on that strike.  That's the record I'd like to make.
>    THE COURT: Thank you.  I'll hear from the state in a second.
>    [GR 37] (e): Determination.  "The Court shall then evaluate the reasons given to justify the peremptory challenge in light of the totality of the circumstances.  If the Court determines that an objective observer could view race or ethnicity as a factor in the use of the peremptory challenge then the peremptory challenge shall be denied.  The Court need not find purposeful discrimination to deny the peremptory challenge.  The Court should explain its rulings on the record."
>    Before Mr. Chen responds from the state, I'll indicate that there are in [GR 37] (g) "circumstances considered" and (h), "reasons presumptively invalid."  However, I will note that because we ran into this in a couple of

4

trials before, ethnicity and race are factors. . . . We have at least two people of race or ethnicity that appears to be different than simply just of European heritage or descendancy. And that would be Mr. Longtimesleeping, number five, and Ms. Munoz, number 8. . . .

Mr. Chen, did you want to answer to the defense's motion?

MR. CHEN: Your Honor, *I previously indicated to the Court my reasons for objecting to number 11*. Number 11 responded to my questions. And those were nonracial or nonethnic reasons. Those are reasons because he indicated he would not be able to be fair and impartial to law enforcement based on prior experience.

In addition, number one, Gloria Urness is somebody who is Latino or Latina. And that was struck by the defense.

. . . .

MR. CHEN: As well as we still have number 8, which is Ms. Munoz, who appears to be Latina, as well as others and higher numbers. So there are other individuals in there who are Latinx.

THE COURT: Subsection (h), "reasons presumptively invalid. Because historically the following reasons for peremptory challenges have been associated with improper discrimination in jury selection in Washington State the following are *presumptively invalid reasons for a peremptory challenge. One, having prior contact with law enforcement officers. Two, expressing a distrust of law enforcement* or belief that law enforcement officers engaged in racial profiling. 3, having a close relationship with people who have been stopped, arrested or convicted of a crime." Those are the only ones really that are relevant to this inquiry. That so far has been the state's—some of that or portions of it have been the state's reasoning for striking number 11 is because of a—I'm phrasing it, a distrust of law enforcement or at least expressing that perhaps it's not the second clause about racial profiling, expressing a distrust about law enforcement. I don't know about having prior contact. So I need to a little bit more information on this one.

First I'll start with Mr. Allen. Is there some concern there as to (h)(2) or was it strictly based upon he looks just like your client in terms of his gender and heritage and nothing further?

MR. ALLEN: Well, I think (h)(1) and (h)(2) apply.

THE COURT: Okay.

MR. ALLEN: Prior contact with law enforcement.

THE COURT: Can you expand on that? I'm trying to recall what he said about his prior contacts with law enforcement.

MR. ALLEN: He stated that he's been unlawfully stopped by law enforcement.

5

THE COURT: Somehow I missed that.

MR. ALLEN: He referenced tinted windows, the windows were down.

THE COURT: Never mind. Thank you for reminding me of that. It wasn't registering at the moment. Okay. Mr. Chen, I'll give you one last opportunity to respond to that.

MR. CHEN: Your Honor, the answer with regards to not being able to fair and impartial to the testimony of law enforcement officers—

THE COURT: Hold on. I'm going to read something else to myself.

MR. CHEN: He's also one of the individuals who indicated previously that they have a strong opinion of DUI and would not be able to set that aside either.

THE COURT: Mr. Allen, it's your motion. I'll give you one last chance to the matter that Mr. Chen brought up, which is this issue, and it was part—quite frankly, it was part of the state's motion anyway that he couldn't be fair and impartial. But what's your answer to that? That would be a valid reason to strike because the individual at least expressed some reluctance to be fair and impartial and not allow outside influences to affect his decision making.

Is there a reason why that's not a—I want to hear argument from you that that's not a valid reason to or that should be overcome by the concern under (h)(1) and (2).

MR. ALLEN: So I agree, generally speaking, that that is a valid reason. However, for this particular juror, I think he was rehabilitated based on my questioning of him. And he responded affirmatively that yes, he would be able to remove that bias juror, I think he was rehabilitated based on my questioning of him. And he responded affirmatively that yes, he would be able to remove that bias that he stated he held initially. That he understood yes, there are some bad cops. He's not going to hold it against the two officers in this particular case. And that he understands in walks of life sometimes there's bad people in jobs and good people in jobs. And he's not going to keep that life experience and apply it to this particular set of circumstances in this case. I believe he was rehabilitated through that questioning.

THE COURT: Well, at least as far as a challenge for cause, I agree that he was rehabilitated. That's why I denied the state's motion to excuse for cause.

I go through general Rule 37. And, again, I'm looking at those factors. There's also other circumstances to be considered. This is under (g). Let me read that to myself again. Hold on.

6

So under (g), circumstances to be considered, sub one, the number and types of questions posed to the prospective juror, which may include consideration of whether the party exercising the peremptory challenge failed to question the perspective juror about the alleged concern.

I can't make that finding because I think that the state did ask questions about that. Or certainly it was elicited enough that we could understand that particular jurors or panelists answers or opinions.

Two, whether the party exercising the peremptory challenge asked significantly more questions or different questions of the potential juror. So I guess one is you didn't do enough questions. And the other one, you did too many questions. I'm not sure which I'm supposed to be looking at.

Three, whether other prospective jurors provided similar answers but were not subject to peremptory challenges. We don't know that because we haven't gone through all the peremptory challenges yet.

Four, whether a reason might be—

MR. CHEN: Actually, we did, Your Honor.

THE COURT: What? We did. Those were jurors number three and four. But I haven't gone through all of them.

MR. CHEN: It says whether other prospective jurors provided similar answers. Those were three and four and 11. And I have number three was excused by cause. I used my peremptory challenge on number four. And I have used my peremptory challenge on number 11. They gave similar answers.

MR. ALLEN: I don't recall number four giving a similar answer to that.

THE COURT: Timeout. I'm pointing out that the issue is not ripe yet because we haven't gotten through all of it. We haven't gotten through how the rest of the peremptory challenges are going to be exercised yet. I'm simply indicating at this point it's not ripe. We don't know. I'll allow Mr. Chen's argument to stand for the record.

But, again, I'm just finding at this point I'm not saying Mr. Chen is right or wrong. I'm not finding it wouldn't be ripe yet because we haven't gone through the remainder of the process.

Four. Whether a reason might be disproportionately associated with race or ethnicity. I don't know these days. I can't—that would be me then judging how certain races or ethnicities would perceive law enforcement. And I can't say how somebody would or would not do it. There's plenty of folks who are of European ethnicity who have a very strong distrust of a lot of members of the Washington State government, especially if they have a D at the end of their name, they're a representative. So I just don't know, especially in this community. I can't answer that one.

7

And then five, whether the party has used peremptory challenges disproportionately against a given race. We haven't gotten through that. Or it says in the present or in past cases. I have no way of knowing about Mr. Chen's or the state's use of them in the past that would suggest one way or the other. And we haven't—again, that's not ripe. Chen's or the state's use of them in the past that would suggest one way or the other. And we haven't—again, that's not ripe. So I am under (h)(1) and (2), those would be presumptively invalid reasons to strike. However, the additional reasons that the state has given is because of the—whether he could be fair and impartial. And while that was not enough for cause, that still could be a reason. It could say I don't trust cops, but it doesn't say that I wouldn't— the person said I couldn't be fair and impartial. *And at this point I'm going to indicate that just because somebody has acquiesced to the questions in voir dire does not necessarily mean a party has to take that full freight and believe everything they say. There is an opportunity then to use. And I will say that the state did make—made its exercise for cause. When that was denied, that is a valid reason to use a peremptory challenge if it's otherwise been denied for cause. I have said that on the record before. I'm denying it for cause. That's why you have peremptory challenges.*

So on that note I am denying defense motion as to under Rule 37 as number to number 11. And the peremptory exercise will stand.

MR. ALLEN: Can I respond quickly?

THE COURT: You can make a record.

MR. ALLEN: Thank you. I don't believe under (g)(1) that there was any followup questioning by Mr. Chen of this particular juror. I don't think he tried to understand why he felt a certain way. He got the answer and he left it at that. Then he moved to strike them based off of the response.

Throughout this afternoon I have been asking the Court and the Court has agreed this is the process where we find out what their biases are, why they hold them and whether they can put them aside or not. I have requested that for this particular person. Mr. Chen didn't followup with him. He just let it go. And I rehabilitated him I felt, so I understand the Court's ruling and I'll accept it. I disagree just for the record. And I don't think that (g)(1) was satisfied in this particular case. I just want to make that record. I understand Your Honor's ruling.

THE COURT: The record for how it occurred will speak for itself regardless of what my recollection was. I'm going to find at this point that there was at least a valid reason given that would overcome any concern about striking for race or ethnicity. Again, I can't consider gender because that's not listed there.

8

RP at 167-78 (emphasis added).

The United States and federal constitutions guarantee a criminal defendant the right to a fair and impartial jury. U.S. CONST. AMEND. VI; WASH. CONST. art. I, § 22. Prospective jurors themselves have the constitutional right not to be excluded from serving on a jury due to discrimination. *Powers v. Ohio*, 499 U.S. 400, 409, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991). The Constitution forbids striking even a single prospective juror for a discriminatory purpose. *United States v. Vasquez-Lopez*, 22 F.3d 900, 902 (9th Cir. 1994).

During jury selection, a party exercises peremptory challenges, striking jurors for no stated reason, to winnow jurors believed best for his or her case. *State v. Lahman*, 17 Wn. App. 2d 925, 930-32, 488 P.3d 881 (2021). The law affords a party peremptory challenges as a privilege, not a right. *State v. Lahman*, 17 Wn. App. 2d 925, 938 (2021). Not surprisingly, reliance on instincts to render judgment about other people's thought processes and beliefs has historically opened the door to implicit and explicit bias in jury selection. *State v. Orozco*, 19 Wn. App. 2d 367, 373, 496 P.3d 1215 (2021). The law assigns a judge an important role in precluding use of peremptory challenges in a discriminatory manner. *Snyder v. Louisiana*, 552 U.S. 472, 486, 128 S. Ct. 1203, 170 L. Ed. 2d 175 (2008); *United States v. Vasquez-Lopez*, 22 F.3d 900, 902 (9th Cir. 1994).

In *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), the United States Supreme Court developed a three-part test for assessing whether a peremptory challenge was based on improper discrimination and violative of the

9

constitution. First, the party objecting to the peremptory challenge must establish a prima facie case giving rise to an inference of discriminatory purpose. *Batson v. Kentucky*, 476 U.S. 79, 92-93 (1986). If the objector meets this initial burden, the test shifts the burden to the party asserting the challenge to provide a neutral explanation. *Batson v. Kentucky*, 476 U.S. 79, 97 (1986). If the proponent of exclusion accomplishes this goal, the judge must decide whether the objecting party established purposeful discrimination. *Batson v. Kentucky*, 476 U.S. 79, 98 (1986).

A party faces significant obstacles to proving a discriminatory purpose. The peremptory challenger may mask the challenge's true purpose by identifying innocuous reasons for the challenge. Thus, the *Batson* test did little to end discrimination and, in particular, hidden discrimination. Most Americans condemn overt acts of racism, yet the plague of racism persists through negative stereotypes and assumptions that operate on a subconscious level and lead people to make discriminatory decisions without any sort of purposeful plan or deliberation. *State v. Saintcalle*, 178 Wn.2d 34, 53, 309 P.3d 326 (2013) (plurality opinion), *abrogated on other grounds by City of Seattle v. Erickson*, 188 Wn.2d 721, 398 P.3d 1124 (2017).

To end implicit bias in jury selection, the Washington Supreme Court, in 2018, adopted General Rule (GR) 37. *State v. Tesfasilasye*, 200 Wn.2d 345, 347, 518 P.3d 193 (2022). The rule declares in pertinent part:

> (a) Policy and Purpose. *The purpose of this rule is to eliminate the unfair exclusion of potential jurors based on race or ethnicity.*
> . . . .

10

(e) Determination. *The court shall then evaluate the reasons given to justify the peremptory challenge in light of the totality of circumstances. If the court determines that an objective observer could view race or ethnicity as a factor in the use of the peremptory challenge, then the peremptory challenge shall be denied. The court need not find purposeful discrimination to deny the peremptory challenge.* The court should explain its ruling on the record.

(f) Nature of Observer. For purposes of this rule, an objective observer is aware that implicit, institutional, and unconscious biases, in addition to purposeful discrimination, have resulted in the unfair exclusion of potential jurors in Washington State.

(g) Circumstances Considered. In making its determination, the circumstances the court should consider include, but are not limited to, the following:

(i) the number and types of questions posed to the prospective juror, which may include consideration of whether the party exercising the peremptory challenge failed to question the prospective juror about the alleged concern or the types of questions asked about it;

(ii) whether the party exercising the peremptory challenge asked significantly more questions or different questions of the potential juror against whom the peremptory challenge was used in contrast to other jurors;

(iii) whether other prospective jurors provided similar answers but were not the subject of a peremptory challenge by that party;

*(iv) whether a reason might be disproportionately associated with a race or ethnicity;* and

(v) whether the party has used peremptory challenges disproportionately against a given race or ethnicity, in the present case or in past cases.

(h) *Reasons Presumptively Invalid. Because historically the following reasons for peremptory challenges have been associated with improper discrimination in jury selection in Washington State, the following are presumptively invalid reasons for a peremptory challenge:*

(i) *having prior contact with law enforcement officers;*

(ii) *expressing a distrust of law enforcement or a belief that law enforcement officers engage in racial profiling;*

(iii) having a close relationship with people who have been stopped, arrested, or convicted of a crime;

(iv) living in a high-crime neighborhood;

(v) having a child outside of marriage;

(vi) receiving state benefits; and

11

(vii) not being a native English speaker.

(Emphasis added.)

GR 37 restricts a party's ability to remove prospective jurors from a jury panel without cause. *State v. Lahman*, 17 Wn. App. 2d 925, 928 (2021). The rule seeks to reduce racial discrimination in jury selection by focusing on the danger of implicit bias. *State v. Lahman*, 17 Wn. App. 2d 925, 928 (2021). Under GR 37, a judge must deny a party's attempt to remove a juror without cause, known as a peremptory challenge, if an objective observer *could* view race or ethnicity as *a* factor in the attempted removal. *State v. Lahman*, 17 Wn. App. 2d 925, 928 (2021). Under the terms of the rule, an objective observer must be deemed aware of implicit, institutional, and unconscious bias, in addition to purposeful discrimination. *State v. Lahman*, 17 Wn. App. 2d 925, 928 (2021).

GR 37 concerns itself with possibilities, not actualities, of discrimination. *State v. Lahman*, 17 Wn. App. 2d 925, 938 (2021). This standard of "could view" of course leads to the denial of more peremptory challenges than a standard of "would view." *State v. Tesfasilasye*, 200 Wn.2d 345, 357 (2022).

GR 37 recognizes the trial process must be free from the appearance of discrimination, regardless of actual motives or intent. *State v. Lahman*, 17 Wn. App. 2d 925, 938 (2021). GR 37 teaches that peremptory strikes exercised against prospective jurors who appear to be members of racial or ethnic minority groups must be treated with skepticism and considerable caution. *State v. Lahman*, 17 Wn. App. 2d 925, 938 (2021).

12

GR 37 furnishes a guided process for assessing the issue of bias within peremptory challenges. *State v. Lahman*, 17 Wn. App. 2d 925, 934 (2021). The rule lists five nonexclusive circumstances relevant to assessing the nature of a peremptory challenge. GR 37(g); *State v. Lahman*, 17 Wn. App. 2d 925, 934 (2021). The rule also specifies seven presumptively invalid justifications for peremptory challenges. GR 37(h); *State v. Lahman*, 17 Wn. App. 2d 925, 934 (2021). These justifications are disproportionately associated with race or ethnicity. GR 37(g)(iv); *State v. Lahman*, 17 Wn. App. 2d 925, 936 (2021). The State may not combine a race-neutral explanation with a presumptively invalid rationalization to remove a juror. *State v. Orozco*, 19 Wn. App.2d 367 (2021).

I now review Washington decisions applying GR 37 in the context of the State's exercise of a peremptory challenge. In *State v. Lahman*, 17 Wn. App. 2d 925, 936 (2021), the State prosecuted Travis Lehman for kidnapping and assault of his girlfriend. The State exercised a peremptory challenge on an Asian venireman and justified the exclusion on the lack of experience of the young man. This court held the exercise of the peremptory challenge to violate GR 37. Research shows that a common stereotype of Asian Americans is that they are strong in academics, to the detriment of interpersonal skills. The State did little to explain why the juror's age prevented him from service and instead opened the possibility that the prosecution implicitly and unsuitably relied on a stereotype that an Asian American lacked the frame of mind to side with the State. We did not conclude that the prosecutor's decision to strike the juror resulted from purposeful, let alone improper, discrimination. We emphasized that the Supreme Court

13

wrote GR 37 in terms of possibilities, not actualities. The rule recognizes the trial process must be free from the appearance of discrimination, regardless of actual motives or intent.

We compare and contrast *State v. Lahman* to Jose Hernandez's appeal. Travis Lahman's jury, like Hernandez's jury, contained other minorities. The State, however, in Hernandez's prosecution, asked juror 11 many relevant questions, probably a factor in favor of the State. The prosecutor of Lahman asked the challenged juror few questions.

In *State v. Orozco*, 19 Wn. App.2d 367 (2021), this court reversed a conviction for murder, among other convictions. We held that the State's peremptory challenge not only violated GR 37 but the narrower rule emanating from United States Supreme Court's landmark decision in *Batson v. Kentucky*, 476 U.S. 79 (1986). Juror 25, removed by a peremptory challenge, was the only African-American in the jury pool. Juror 25 indicated she could be fair to both sides. The State did not ask any questions of her. After a defense challenge to the removal of juror 25, the State justified the removal because its counsel had prosecuted her in the past and she appeared in police reports as associating with others engaged in crimes.

On review, this court recognized that the prosecutor having prosecuted the juror constituted a racially neutral reason. But the State added the invalid justifications of juror 25 having earlier police contact and appearing in police reports as associating with criminals. The latter two motivations fell on the list of reasons historically associated with racial discrimination. This court resolved that combining a race-neutral explanation

14

with a presumptively invalid rationalization crossed the line into forbidden territory. An objective observer could view race as a factor in the use of the peremptory strike.

*State v. Orozco* possesses important differences from the prosecution of Jose Hernandez. The prosecution in *Orozco* did not ask juror 25 questions, whereas the State, in Hernandez's prosecution, asked juror 11 similar questions to other venire people. Juror 25 averred that she could be impartial to both sides. Juror 11 equivocally declared impartiality. Still, the trial court, in response to the challenge for cause, found Hernandez's juror 11 acceptably impartial. More importantly, the State employed only presumptively invalid reasons when justifying juror 11's preemption.

In *State v. Tesfasilasye*, 200 Wn.2d 345 (2022), a jury found Amanuel Tesfasilayse, a Black Eritrean immigrant who worked as a driver for people with disabilities, guilty of sexually assaulting a visually impaired woman. In a juror questionnaire, juror 25, an Asian woman, questioned whether she could be fair. During voir dire, she revealed that she had been sexually assaulted as a child. She also disclosed that the State prosecuted her son for allegedly placing a young girl's hand on his groin. At the advice of counsel, the son pled guilty, although he was innocent according to his mother. She stated she worked in a nursing home as a sexual assault investigator and understood that allegations of sexual assault were common in caregiver settings. Finally, juror 25 indicated she would separate her personal experiences from the facts of the case, and, contrary to her questionnaire answer, she could be fair to both parties.

15

In *State v. Tesfasilasye*, the State exercised a peremptory challenge on juror 25. In face of a GR 37 objection from Amanuel Tesfasilayse, the State emphasized the juror's son's sexual assault conviction. The trial court permitted the peremptory challenge because the juror stated she believed her son to be treated unfairly. The trial court concluded that the juror was "not a believer in the [judicial] system." The trial court also noted that another Asian juror sat in the panel. The Washington high court reversed the conviction in light of denial of Tesfasilayse's GR 37 objection. The Supreme Court deemed juror 25 uniquely qualified to empathize with both the accused and the complaining witness. The court emphasized that, under GR 37, excusing a juror for a close relationship with someone previously arrested, charged, or convicted of a crime was presumptively invalid.

I compare Jose Hernandez's appeal with *State v. Tesfasilasye*. Juror 25, in *Tesfasilasye*, despite a contrary questionnaire answer, repeatedly claimed during voir dire the ability to be fair to both sides. Her background provided reasons to side with both the State and the accused. Jose Hernandez's juror 11 did not have this disparate background and reluctantly agreed to being unbiased. Still, in *Tesfasilasye*, the State justified removal because of the son's previous connection to the judicial system. The State impliedly accused Hernandez's juror 11 as a nonbeliever in the criminal justice system, a forbidden reason according to *Tesfasilasye*. A *Tesfasilasye* seated juror was the same race as the excluded juror.

The State faulted Jose Hernandez's juror 11 for bias because of his earlier contact with law enforcement and his distrust of law enforcement. GR 37(h) reads that removing a juror because of earlier contact with law enforcement, expressing a distrust of law enforcement, and holding a belief in racial profiling are "presumptively invalid." The court rule, however, does not explain whether a presumptively invalid reason forms a conclusive or mandatory presumption, on the one hand, or a permissive or rebuttable presumption, on the other hand. Against a mandatory presumption, no kind of testimony, however strong, will prevail, while permissive presumptions are equally conclusive until overcome by proof. *State v. Pilling*, 53 Wash. 464, 467, 102 P. 230 (1909). No Washington decision has yet to declare a presumptively invalid reason under GR 37 to be an irrebuttable presumption, although the opposite is also true. In all reported cases, wherein one of the presumptively invalid reasons came into play, the reviewing court held GR 37 to be violated. In another case involving racial prejudice infecting voir dire, the Washington Supreme Court adopted an automatic reversal standard, a standard similar to a mandatory presumption. *State v. Zamora*, 199 Wn.2d 698, 722, 512 P.3d 512 (2022).

GR 37 does not expressly read that, if a juror passes for cause, the juror, if a minority, must be seated and any peremptory challenge denied. Conversely, the rule does not expressly declare that a party may still successfully remove a minority juror who passes for cause with a preemptory challenge.

17

I would invalidate the State's exercise of its peremptory challenge against juror 11. Any bias levied by the State against Juror 11 solely and directly related to presumptively invalid reasons. Any bias arises from earlier contact with law enforcement, and the law recognizes that minorities face more law enforcement encounters per capita. The law directs us to use skepticism and caution at peremptory challenges.

We perform de novo review of trial court's decisions under GR 37. We need not be convinced by a probability that implicit bias occurred, only that an objective observer *could* view race or ethnicity as *a* factor in the attempted removal. Perhaps a peremptory challenge would be permissible if the challenged juror unequivocally and persistently declared he, she, or them would never believe law enforcement or would always rule for the defendant in a criminal case. Juror 11 did not so state. The court had already denied removal for cause and none of the reasons for removal changed from the State's for cause challenge to the peremptory challenge. The seating of other minority jurors on Hernandez's jury does not shield the State from the invalid reasons listed in GR 37.

Because the Constitution forbids striking even a single prospective juror for a discriminatory purpose, allowing a party to dismiss a juror for reasons of race or ethnicity requires reversal and remand for a new trial. *Snyder v. Louisiana*, 552 U.S. 472, 486, 128 S. Ct. 1203, 170 L. Ed. 2d 175 (2008); *United States v. Vasquez-Lopez*, 22 F.3d 900, 902 (9th Cir. 1994). This remedy applies regardless of the strength of the prosecutor's case or the hardship to victims or witnesses. *State v. Lahman*, 17 Wn. App. 2d 925, 932 (2021).

Presumably we do not want a guilty party to go free because a juror was reluctant to convict based on how law enforcement treated her, a family member, or a friend in the past or because a juror belongs to a minority group subjected to discriminatory and unfair treatment throughout history. Still, the state of Washington deems imperative the excision of institutional racism prevalent in its criminal justice system. The State may avoid reversals and second trials by cautiously exercising peremptory challenges, including seating jurors that the trial court passes for cause.

I dissent:

_____
Fearing, C.J.